OPINION
{¶ 1} Emory J. Garner, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found him guilty, pursuant to a bench trial, of three counts of attempted murder with specifications, in violation of R.C. 2923.02 and 2903.02, which are first-degree felonies; and three counts of felonious assault with specifications, in violation of R.C. 2903.11, which are second-degree felonies. *Page 2 
 {¶ 2} On June 16, 2006, Deandre Henry drove his vehicle to meet his friend Christopher Sherman. Henry and Sherman then drove to the workplace of Felicia Lorca and picked her up. Lorca sat in the back seat. The three then proceeded in the vehicle to the apartment of Henry's brother, Dwayne, where Sherman was also living. As the three were sitting in Henry's vehicle outside the apartment, they observed a white car drive past their vehicle from the opposite direction. The vehicle turned around, hit a guardrail, and then approached the three from behind. An assault rifle appeared from the window of the white vehicle, and several shots were fired at Henry, Sherman, and Lorca. Henry was struck several times and Sherman was shot in the head and hand, while Lorca was not struck. A few days after the incident, Henry picked appellant from a photo array as looking "familiar."
 {¶ 3} Over two months later, Henry again picked appellant from two photo arrays as being the shooter of the rifle. Lorca chose Rashawn Garner, appellant's brother, from a photo array as being the driver of the white vehicle. Sherman chose Rashawn from a photo array as the driver and the one who "shot me."
 {¶ 4} On September 14, 2006, appellant was indicted on three counts of attempted murder and three counts of felonious assault, all with accompanying firearm and drive-by specifications, and one count of having a weapon while under disability. Rashawn was indicted on related charges. Appellant, as well as Rashawn, waived his right to a trial by jury, and a bench trial involving both co-defendants ensued on February 27, 2007. On March 1, 2007, the trial court found appellant guilty of three counts of attempted murder and three counts of felonious assault, as well as the specifications. On May 9, 2007, the trial court issued its judgment and sentenced appellant in *Page 3 
accordance with the following: ten-year determinate sentences with respect to the attempted murder counts, to be served concurrent with each other; eight-year determinate sentences with respect to the felonious assault counts, to be served concurrent with each other; the sentences for the attempted murder counts to be served concurrent with the felonious assault counts; five years mandatory actual incarceration with respect to the first specification in the first attempted murder count (with the first specification as to the remaining counts merging with the first specification in the first attempted murder count); and three years of mandatory actual consecutive incarceration with respect to the second specification in the first attempted murder count (with the second specification as to the remaining counts merging with the second specification in the first attempted murder count). Accordingly, appellant was sentenced to a total of 18 years of incarceration. Appellant appeals the judgment of the trial court, asserting the following two assignments of error:
 [I.] THE TRIAL COURT ERRED IN ENTERING JUDGMENT AGAINST THE DEFENDANT BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION
 [II] THE TRIAL COURT ERRED IN ENTERING JUDGMENT AGAINST THE DEFENDANT BECAUSE SUCH JUDGMENT IS CONTRARY TO THE WEIGHT OF THE EVIDENCE[.]
 {¶ 5} We will address appellant's first and second assignments of error together. Appellant argues in these assignments of error that the trial court's judgment was based upon insufficient evidence and was against the manifest weight of the evidence. When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the *Page 4 
average mind of the defendant's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781.
 {¶ 6} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the State of Ohio, plaintiff-appellee, presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy (1998),84 Ohio St.3d 180, 193-194; State v. Eley (1978), 56 Ohio St.2d 169, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 7} Here, appellant contends that the evidence was insufficient as to his convictions for attempted murder and felonious assault, and such convictions were *Page 5 
against the manifest weight of the evidence. Appellant's sole argument under these assignments of error is that the testimony and evidence failed to establish his identity as the shooter. We disagree.
 {¶ 8} Numerous witnesses testified for the state. Patrick Dorn, a police officer for the city of Columbus, testified that there were initially seven suspects to the crime, including appellant and Rashawn. On June 18, 2006, he put together seven black and white photo arrays with one of the seven suspects in each of the arrays. He showed the arrays to Henry, and Henry picked appellant from one of the arrays, writing "looks familiar" on the photo. Dorn testified that the passenger's side of the passing vehicle would have been closest to Henry, who was in the driver's seat of his vehicle. He then showed two photo arrays to Sherman on August 24, 2006. Appellant was in one array, and Rashawn was in the other. Sherman did not identify appellant, but identified Rashawn, indicating "That's Ro[.] The driver. He shot me." Sherman stated he knew of Rashawn from the neighborhood. The photo of appellant shown to Sherman was in color and more recent than the one shown to Henry, with appellant having an updated, braided hairstyle. On August 28, 2006, Dorn showed Henry the same arrays, and Henry again identified appellant. On September 1, 2006, Dorn showed Lorca the same two sets of arrays, and she was able to identify Rashawn, stating that she "beli[e]ve[d]" that was him, and she was "close to 100%."
 {¶ 9} Lorca testified that there is not much traffic where they were parked in the apartment complex. Typically, just people who lived there drove through the complex. When the white car drove past them, she only saw the driver, Rashawn, and she was able to identify him as the driver from the photo array shown to her by Dorn. She knew *Page 6 
Rashawn's name because she had "heard of him," though she had never seen him before, and "[everybody was talking about [the shooting]." She admitted she talked to "a lot" of people about what had happened. However, she testified that, when Dorn first came to her with the photo arrays, she had never spoken to Sherman or Henry about possible suspects or any photographs, although she had talked to them about the incident in general. Looking at Rashawn again in the courtroom, she stated there was no doubt that he was the driver. She admitted that, the first time she talked to police, she could only describe the people in the car as black males.
 {¶ 10} Kari Diamond, whose mother lived near the scene of the incident, testified she was in the second-floor bathroom of her mother's residence when she heard six gunshots. She looked out her bathroom window and then her hallway window and got a "pretty good look" at the passenger, which she positively identified in court as being appellant. However, when Dorn showed her a photo array a week before trial, she was not able to identify anyone with certainty.
 {¶ 11} Henry testified that he paid close attention to cars in the apartment complex because there had been a shooting incident the prior week. After the white car turned around, hit the guardrail, and approached them from behind, the vehicle had his "whole" and "undivided" attention. When he saw the barrel of a rifle stick out of the passenger window of the vehicle, he ducked down. Henry further testified that appellant resembles his friend, so he took an extra close look at the passenger as the car passed his vehicle to determine if it was his friend. At trial, he identified the passenger as being appellant, and stated that he still saw the same resemblance in appellant's face as the day the incident happened. Henry also testified that, when Dorn came to the hospital, he picked *Page 7 
appellant from the photo array. When Dorn came later to his home with two photo arrays, he picked appellant again. He added that he did not know appellant's name until he received the subpoena in the mail for trial.
 {¶ 12} Sherman testified he had a "clear view" of the males in the passing vehicle. When Dorn came to see him in the hospital to show him the photo arrays, he had not talked to Henry or Lorca about the events, but they had come to see him on July 4, 2006. He pointed out Rashawn from the photo array. He had never met Rashawn prior to the incident, but had seen him riding around the neighborhood. He thought he knew Rashawn's sister. Sherman further testified that he recognized Rashawn as "Ro" when he first saw him in the vehicle. He testified that, although he told Dorn in the hospital that the shots were fired from the vehicle on both passes, the shots actually occurred only after the vehicle turned around. He stated that, when he first spoke to Dorn, his memory was messed up from being shot in the head. Sherman testified that there was no doubt that the individual in the photo array he identified in the hospital was the same person who was in the vehicle, specifically Rashawn.
 {¶ 13} After a review of the record and the testimony above, we find appellant's convictions were neither against the manifest weight of the evidence nor based upon insufficient evidence. There was sufficient evidence that appellant was the person who shot the victims. Henry identified appellant on two separate dates, once on June 18, 2006, and once on August 28, 2006. Henry testified he paid close attention to cars and took an extra close look at appellant as he passed because he looked like a friend of his. Henry also identified appellant at trial as being the passenger and still saw the same resemblance to his friend as the day the incident happened. These two identifications *Page 8 
alone constitute sufficient evidence. See State v. Bradley, Cuyahoga App. No. 79354, 2002-Ohio-3895 (a pre-trial photographic identification of the defendant from a photo array and an identification in open court constitutes sufficient evidence of identification). In addition, Diamond positively identified appellant in court as the passenger of the passing vehicle. Construing this testimony in favor of the state, and assuming its truth, we find a rational trier of fact could have found the identification of appellant as the shooter proven beyond a reasonable doubt. Therefore, we find there was sufficient evidence to support the trial court's verdict.
 {¶ 14} Further, viewing all the reasonable inferences that arise from the evidence, and having no reason to disturb the weight given to this evidence by the jury, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice. Appellant presented no witnesses in defense to refute any of the testimony of the state's witnesses. However, he claims that the identifications offered by the three victims were weak and tainted by the many weeks that had passed between the shooting and the identifications. He suggests that people in the neighborhood influenced the victims' memories and opinions. Appellant also raises the possibility of intentional collusion on behalf of the victims to frame appellant for the crime. Initially, we note appellant's arguments regarding outside influences largely attack the testimony and credibility of only Lorca and Sherman, both of whom identified only appellant's co-defendant. Further, that Henry's identification of appellant was tainted by outside influence or collusion is based solely upon conclusory, unsupported accusations. Importantly, Henry first identified appellant as looking "familiar" while he was in the hospital, only two days after the incident, and there is no evidence that he had spoken to either of the other two victims or anyone in the neighborhood about *Page 9 
suspects at that time. Also, Lorca and Sherman explicitly testified that they had not talked to Henry about the identification of the assailants when they all met on July 4, 2006, thereby refuting the argument that Henry's later identification on August 28, 2006, was tainted by collusion between the victims. The trial court was also aware that a span of ten weeks had elapsed between the crime and Henry's later identification and apparently found it not so long as to make the identification unreliable.
 {¶ 15} Further, defense counsel was able to cross-examine Henry with regard to his identifications, including questions as to how closely he was watching the passing vehicle and what he remembered about the photographic arrays. Although defense counsel attempted to expose a memory problem on behalf of Henry by demonstrating that he did not remember the number of photographic arrays Dorn showed him or whether they were black and white photographs, the trial court apparently was not persuaded that such issues should negate his identification. We agree that these lapses are insignificant to Henry's identification of appellant. In addition, we note Henry stated that he did not know appellant's name for certain until he received the subpoena in the mail for trial. Also buttressing Henry's identification is that the passenger's side of the passing vehicle, where appellant sat, would have been closest to Henry, who was in the driver's seat of his vehicle. Thus, Henry would have been the most likely person to identify appellant. Appellant also fails to address Diamond's testimony and does not explain why her eyewitness testimony identifying appellant as the passenger of the vehicle should be suspect.
 {¶ 16} Appellant also attacks Henry's identification because Henry stated he recognized appellant, in part, based upon the fact that appellant resembles one of his *Page 10 
friends. However, we agree with the state that this explanation strengthens the identification, not weakens it. Henry testified that, because appellant resembles one of his friends, he took an extra close look at appellant as the vehicle passed in order to determine if it was actually his friend. Henry was also able to identify appellant in court because he still saw the same resemblance between appellant and his friend. For these reasons, we find this argument unpersuasive.
 {¶ 17} Appellant offers no compelling reason to question Henry's credibility, and it appears the trial court believed he testified truthfully and was able to identify appellant based upon seeing him at the time of the incident and not based upon some later tainting of evidence or collusion. Thus, the trial court's decision to find appellant guilty was not against the manifest weight of the evidence. Although appellant has not specifically raised any argument outside of his identification, we have reviewed the record regarding the other elements of the offenses and conclude there was sufficient evidence to find appellant guilty, and the convictions were not against the manifest weight of the evidence. For these reasons, appellant's first and second assignments of error are overruled.
{¶ l8} Accordingly, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 KLATT and FRENCH, JJ., concur. *Page 1