OPINION
{¶ 1} Appellant, Rashawn D. Garner ("appellant"), filed this appeal seeking reversal of the decision by the Franklin County Court of Common Pleas convicting him of three counts of attempted murder and three counts of felonious assault. For the reasons that follow, we affirm the trial court's decision.
 {¶ 2} On June 16, 2006, Deandre Henry ("Henry"), Christopher Sherman ("Sherman"), and Felicia Lorca ("Lorca"), were sitting in a vehicle outside the apartment *Page 2 
building where Sherman and Henry's brother, Dwayne, lived. They observed a white vehicle with two individuals in it driving past them going opposite the direction their vehicle was facing. The white vehicle turned around where the street reached a dead end, and all three heard the vehicle hit a guardrail.
 {¶ 3} The white vehicle then began approaching their vehicle from behind. As it did so, the barrel of an assault rifle appeared out of the vehicle's passenger window, and several shots were fired. Lorca, who was sitting in the back seat, was not hit by any gunfire, but Henry and Sherman, who were sitting in the front seat, were. Henry was struck by bullets in the arm and shoulder, the chest, and the leg. Sherman was struck in the head. The white vehicle then exited the area. Columbus police officers subsequently recovered a number of shell casings from a 7.62 assault rifle from the scene.
 {¶ 4} Detective Pat Dorn of the Columbus Police Department was the lead detective on the case. Detective Dorn testified that, based on information received from patrol officers working in the area of the shooting, he developed a list of seven possible suspects, including appellant and Emory Garner ("Emory"). Detective Dorn then created a photo array for each of the seven suspects. On the Sunday following the incident, Detective Dorn took the seven arrays to Henry in the hospital. Henry stated that Emory's photo looked familiar to him, but otherwise could not identify anyone from any of the arrays.
 {¶ 5} On August 24, 2006, Detective Dorn went to Youngstown, Ohio to visit Sherman in the hospital where he was recovering from his head wound. Based on further information he had received, Detective Dorn considered appellant and Emory to be the main suspects, so he took only arrays that included their photos. The two arrays differed *Page 3 
from the ones Detective Dorn showed to Henry in that they included color photos rather than black and white, and the photos were more recent. Sherman was unable to identify Emory from his array, but did identify appellant, writing on his photo, "He's the one who shot me. That's Ro."
 {¶ 6} Detective Dorn then approached Henry a second time, this time with the two arrays he had shown Sherman. Henry was once again unable to identify appellant, but stated that he believed Emory was in the white vehicle during the shooting. On September 1, 2006, Detective Dorn showed the two arrays to Lorca. Lorca did not identify Emory, but did identify appellant, writing on his photo, "I believe it was him, close to a hundred percent."
 {¶ 7} Appellant and Emory were each indicted on three counts of attempted murder and three counts of felonious assault, all with firearm and drive-by specifications.[1] Both appellant and Emory waived their rights to a jury trial, and the trial court proceeded to hold a bench trial with appellant and Emory as co-defendants. After trial, the court convicted appellant of the three charges of attempted murder and three charges of felonious assault, but acquitted appellant of all of the specifications, specifically finding that appellant was the driver and Emory was the shooter.[2] The court sentenced appellant to ten years on the attempted murder counts, eight years on the felonious assault counts, and ordered that the sentences be served concurrently, for a total sentence of ten years of incarceration.
 {¶ 8} Appellant filed this appeal, alleging two assignments of error: *Page 4 
 ASSIGNMENT OF ERROR NO. I: THE TRIAL COURT ERRED AND DEPRIVED DEFENDANT-APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 16 OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF THREE COUNTS OF ATTEMPTED MURDER AND THREE COUNTS OF FELONIOUS ASSAULT AS HIS CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE ALSO AGAINST MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR NO. II: APPELLANT'S RIGHTS UNDER THE SIXTH AMENDMENT (CONFRONTATION CLAUSE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL) OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION (CONFRONTATION CLAUSE), WERE VIOLATED, ALONG WITH RULES 801 AND 403 OF THE OHIO RULES OF EVIDENCE, WHEN THE TRIAL COURT PERMITTED TESTIMONIAL HEARSAY EVIDENCE TO BE HEARD, AND TRIAL COURT WAS INEFFECTIVE IN THOSE INSTANCES WHERE HE FAILED TO OBJECT TO SUCH EVIDENCE.
 {¶ 9} In his first assignment of error, appellant argues that his convictions were not supported by sufficient evidence, and were against the manifest weight of the evidence. When reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court must examine the evidence submitted at trial to determine whether such evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d 560. *Page 5 
 {¶ 10} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 11} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230,39 O.O.2d 366, 227 N.E.2d 212, at paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 12} Appellant's arguments regarding sufficiency and manifest weight are largely interrelated. Appellant argues that no physical evidence was offered placing appellant at the scene of the shootings, nor was any evidence offered establishing any link between appellant and any of the victims. As a result, the state's case was based entirely on identification testimony, which appellant argues was unreliable. *Page 6 
 {¶ 13} Initially, we note that the state was not required to provide physical evidence placing appellant at the scene of the crime, nor was it required to establish any connection between appellant and the victims. The state could have carried its burden of proof solely through identification testimony.
 {¶ 14} Appellant argues that Henry's testimony lacked credibility because when he was initially shown the photo arrays, he was only able to state that Emory looked familiar, but was unable to state that Emory was present at the scene of the crime. Only on being shown a second photo array and at trial was Henry able to state that Emory was in the vehicle from which the shots were fired. However, Henry never identified appellant as being involved in the shootings. Consequently, his testimony had no bearing on the trial court's conclusion regarding the charges against appellant.[3]
 {¶ 15} Appellant next argues that Sherman's identification of appellant as having been in the white vehicle at the time of the shootings lacked credibility. Appellant argues that over two months passed between the time of the shootings and the time Detective Dorn showed Sherman the two photo arrays with pictures of appellant and Emory. Appellant also argues that Sherman's testimony regarding his identification of appellant lacks credibility because he testified that he had never met appellant prior to the shooting, and was not told appellant's full name until after he identified appellant from the photo array, but was able to identify appellant by his nickname, "Ro," both at the time of the shootings and at the time he was shown the array and before he was told appellant's full *Page 7 
name. Appellant suggests that Sherman's assertions regarding his recognition of one of the people in the white vehicle as "Ro" cannot be believed because Sherman would have approached police investigators with this information rather than waiting until Detective Dorn came to him with the photo arrays.
 {¶ 16} These circumstances surrounding Sherman's identification of appellant from the photo array and his knowledge of appellant's nickname do not make Sherman's testimony so lacking in credibility that it must be discounted in its entirety. Although it may have been reasonable to expect Sherman to have given police the information that one of the people in the white vehicle was known to him as "Ro" at some point prior to being approached by Detective Dorn with the photo arrays, we cannot say his failure to do so renders his testimony so incredible that his identification of appellant must be rejected in its entirety.
 {¶ 17} Appellant also points to inconsistencies between Sherman's statement to Detective Dorn at the time he was shown the photo arrays, as well as inconsistencies between his testimony and that of the other victims, as support for the claim that Sherman's testimony lacked sufficient credibility. For example, in his statement made to Detective Dorn, Sherman stated that gunshots were fired from the white vehicle both as the vehicle passed facing the opposite direction and after the vehicle turned around, but at trial testified as the other victims did, stating that shots were fired only after the white vehicle turned around. Appellant also points to Sherman's testimony in which he denied discussing the shootings with the other victims prior to Detective Dorn's August 24, 2006 visit, which was contradicted by testimony from Lorca, who stated that the three did *Page 8 
discuss the shootings when Henry and Lorca visited Sherman during a visit on July 4, 2006.
 {¶ 18} Similarly, appellant points to inconsistencies in the testimony provided by Lorca. Appellant argues that Lorca was unable to provide any physical description to police at the time of the shootings other than a general description that the people in the white vehicle were two black males, but was able to identify appellant from a photo array shown to her over two months after the incident.
 {¶ 19} A defendant is not entitled to reversal on the grounds of sufficiency of the evidence and manifest weight of the evidence merely because inconsistent testimony was offered at trial. State v.Raver, Franklin App. No. 02AP-604, 2003-Ohio-958. The trial court, in its role as fact finder, was free to believe all, part, or none of Sherman's and Lorca's testimony. Id., citing State v. Antill (1964), 176 Ohio St. 61, 26 O.O.2d 366, 197 N.E.2d 548. Given the trial court's superior position as fact finder to consider the credibility of the witnesses and resolve any inconsistencies in the evidence offered, we cannot say that the inconsistencies pointed out by appellant require that we reverse the trial court's judgment on the grounds of weight and sufficiency of the evidence.
 {¶ 20} Appellant also argues that there was insufficient evidence to convict him based on the trial court's conclusion that he was the driver of the white vehicle, because no evidence was offered that he aided or abetted Emory in the commission of the shootings. In order to support a conviction for complicity by aiding or abetting in the commission of a crime, it must be shown that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." State v. *Page 9 Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796, at syllabus. The defendant's intent may be inferred from the circumstances surrounding the crime. Id.
 {¶ 21} The mere act of driving away from the scene of a shooting perpetrated by a passenger of a vehicle has been held to be sufficient to uphold a conviction based on complicity where the circumstances show the driver knew shots were being fired by the passenger. See State v.Jones, Franklin App. No. 02AP-1390, 2003-Ohio-5994. In this case, the evidence offered showed that appellant was the driver of the vehicle from which Emory fired the shots at the vehicle in which the victims were sitting. Given that the shots were fired using an assault rifle, which would have been obvious to the driver of the vehicle, we cannot say it was improper for the trial court as fact finder to conclude that appellant aided and abetted Emory, or to make the inference that appellant shared Emory's intent, in the commission of the crime.
 {¶ 22} Consequently, appellant's first assignment of error is overruled.
 {¶ 23} In his second assignment of error, appellant argues that his constitutional right to confront the witnesses against him was violated when Detective Dorn testified that appellant and Emory came to be suspects based on information received from patrol officers working in the area of the shootings. Appellant further argues that his right to effective assistance of counsel was violated when his trial counsel failed to object to instances where testimonial hearsay was offered into evidence.
 {¶ 24} The United States Supreme Court has recognized that the right to confrontation as guaranteed by the Sixth Amendment to the Constitution may require exclusion of certain types of hearsay statements, even if those statements would otherwise be admissible under an exception to the hearsay rule. Crawford v. Washington *Page 10 
(2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. If the hearsay statements may be properly characterized as testimonial in nature, their use in a criminal trial violates the confrontation clause unless the person who made the statements is unavailable to testify at trial and the defendant had a prior opportunity to cross examine the speaker. Id. See, also, State v. Crager, 116 Ohio St.3d 369, 2007-Ohio-6840,879 N.E.2d 745.
 {¶ 25} In this case, the Crawford analysis is not implicated because Detective Dorn's testimony did not include any hearsay statements. The testimony at trial was as follows:
 Q: How did you go about developing who the suspects were in this case?
 A: Basically, I received information from the patrol officers that work in that area about a variety of suspects.
 Q: How many communications do you think approximately you received about this shooting?
 A: Maybe a total of ten.
 Q: Out of that were either one of them, Rashawn or Emory Garner?
 MR. WEISMAN: Objection. Calls for a hearsay response.
 MR. BERNARD: Same objection.
 MR. ROGERS: I am offering purely as to how he developed the suspect, not for what he did.
 THE COURT: It will be admitted for that limited purpose.
(Tr., at 30-31.)
 {¶ 26} There was never any testimony elicited from Detective Dorn regarding the specific content of the communications from the patrol officers, nor did Detective Dorn *Page 11 
testify about why the communications caused him to believe appellant and Emory were suspects.[4] Subsequent testimony involved Detective Dorn's explanation of how he prepared the photo arrays he showed to the victims. Detective Dorn's testimony that he received information from patrol officers was offered solely to explain why he prepared the photo arrays he prepared, and therefore provided background for his subsequent testimony regarding his showing of the photo arrays to the victims. As such, the testimony was not offered for the truth of any matter asserted. See State v. Blevins (1987), 36 Ohio App.3d 147,521 N.E.2d 1105.
 {¶ 27} Because Detective Dorn's testimony did not include any hearsay statements, appellant's rights under the confrontation clause were not violated. Furthermore, appellant's claim that he received ineffective assistance of counsel is unavailing because counsel did object to the question regarding inclusion of appellant and Emory as suspects, which resulted in the trial court placing the limitation on the use of the evidence solely for the non-hearsay purpose of explaining how the suspects were developed.
 {¶ 28} In his brief, appellant argues at length that the state engaged in "reverse illicit corroboration," which is described by appellant, without any citation to legal authority, as a process whereby the state bolstered the evidence presented by the victim witnesses by first presenting Detective Dorn's testimony that his investigation had narrowed its focus to appellant and Emory as the suspects. Appellant's argument is premised on his contention that Detective Dorn's testimony constituted hearsay, so our conclusion that the *Page 12 
testimony was not hearsay negates this argument. Moreover, the trial court as fact finder was in a position to evaluate the credibility of the witnesses, including whether their credibility had been improperly bolstered by Detective Dorn's testimony.
 {¶ 29} Appellant also argues that Detective Dorn's testimony regarding the manner in which his investigation was developed should have been excluded under Evid.R. 403 because its probative value was outweighed by its prejudicial effect. Given that the evidence was admitted for the limited purpose of explaining how the investigation was developed, and included no specific information about the content of the information Detective Dorn received, the probative value was not outweighed by any prejudicial effect the information may have had.
 {¶ 30} Consequently, appellant's second assignment of error is overruled, and the trial court's judgment is affirmed.
Judgment affirmed.
McGRATH, P.J., and FRENCH, J., concur.
[1] Emory was also indicted on one count of having a weapon while under a disability.
[2] We upheld Emory's convictions in State v. Garner, Franklin App. No. 07AP-429, 2007-Ohio-5865.
[3] Similarly, appellant presents an argument regarding the testimony of Kari Diamond, a resident in the area of the shootings who identified appellant as the passenger in the white vehicle. The trial court specifically found her testimony not credible, and stated that her testimony had no bearing on his decision. Consequently, it is not necessary for us to consider appellant's argument regarding her credibility.
[4] Eventually, Detective Dorn did testify that the focus of his investigation was narrowed to appellant and Emory in response to the state's question regarding his reasoning for taking only two photo arrays when he visited Sherman in Youngstown. *Page 1