[Cite as *State v. Steward*, 2019-Ohio-5258.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                               :

     Plaintiff-Appellee,              :

                                   No. 19AP-35

v.                                          :       (C.P.C. No. 17CR-4209)

Mi A. Steward,                               :       (REGULAR CALENDAR)

     Defendant-Appellant.            :

---

D E C I S I O N

Rendered on December 19, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Mi A. Steward, appeals from a judgment of the Franklin County Court of Common Pleas convicting her of two counts of felonious assault, in violation of R.C. 2903.11, and improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The events that gave rise to this case occurred on July 22, 2017, when the two victims, Darla Irvin and Andrea Mann, arrived at Irvin's home after a night out. Irvin's home was located at the end of a cul-de-sac at 1811 Alcoy Drive in Columbus, Ohio. In her trial testimony, Irvin stated when she and Mann exited their vehicle at approximately 9:30 or 10:00 p.m., she noticed a dark colored vehicle parked in the cul-de-sac. She stated that when she and Mann reached her front door, she was startled by the sound of gunshots.

When she turned in the direction of the shots, she saw a car pull away. Irvin testified the shots were fired from the middle of the street towards her house and that she believed three shots were fired. According to Irvin, she called 911 about five minutes later and reported the incident. The recording of that call was played for the jury, over appellant's objection, and admitted into evidence as State's Exhibit 1.[1] During the call, the following exchange took place:

> MS. IRVIN: Oh, my God. This girl -- me and my friend just pulled up to my house, and we noticed there was a car already sitting outside. And a girl -- we know the girl. She got out and shot at my house. Like shot at me and my house. There's bullet holes in my house. And drove off in a truck.
>
> 911 DISPATCHER: How long ago was this?
>
> MS. IRVIN: I don't know. It was like 5 minutes ago. Not even 5 minutes. Probably 2 minutes ago.
>
> 911 DISPATCHER: Okay. And was anybody hit?
>
> MS. IRVIN: Oh, my gosh. No, there was nobody hit.
>
> * * *
>
> MS. IRVIN: My house is like the third one.
>
> 911 DISPATCHER: What's her name?
>
> MS. IRVIN: Her name is Sommer Steward. It was two of them. So her and her cousin.
>
> MS. MANN: (Inaudible.)
>
> 911 DISPATCHER: (Inaudible.)
>
> MS. IRVIN: Yeah, her niece. Her niece's name is Mi Angel Steward. Her niece was driving, and she's already wanted for felonious assault. And the girl Sommer Steward is the one who was shooting.

 (Tr. Vol. II at 47-49.)

{¶ 3}    When police arrived at Irvin's home in response to the 911 call, Irvin told Detective Anthony Richardson of the Columbus Division of Police that Sommer was the shooter and that appellant was the driver of the vehicle. The police took photographs of the front of Irvin's home and the kitchen. The photographs purportedly show at least one bullet strike on the front of the home and another bullet strike through the kitchen stove. (State's

---

[1] Appellant did not object when appellee offered the 911 recording into evidence as State's Exhibit 1. (Tr. Vol II at 257-58.)

Exs. 3-1 through 3-19.)  Irvin also signed her name to the photographs of appellant and Sommer that were shown to them by police, identifying them as the perpetrators.  (State's Exs. 16 and 17.)

{¶ 4}  At trial, Irvin testified she is now 31 years old, and she had been friends with Sommer since childhood.  She stated she had also grown up with appellant, who was Sommer's niece.  Irvin told the prosecutor that she did not want to be in the courtroom testifying against Sommer and appellant.  In her trial testimony, Irvin insisted that she was unable to identity either the shooter or the driver on the night of the shooting because she never got a look at their faces, it was dark outside, and she was under the influence of illegal narcotics at the time of the incident.  When Irvin was asked at trial why she told police Sommer was the shooter, she answered as follows:

> We had just got into an altercation, so like I said, we was texting back and forth.  They were saying they were going to come out and do something to me.  Like I said, I just assumed, you know, it was them.  My friend [Mann] said it was them, so I just assumed it was them.

(Tr. Vol. II at 192.)

{¶ 5}  Mann took the stand and asserted that she was not in the courtroom to give testimony against appellant.  She later stated she did not want to see anything bad happen to Sommer either.  Like Irvin, Mann had been a childhood friend of Sommer.  According to Mann, she first met Sommer when Sommer was 10 years old, and she first met appellant when appellant was nine years old.[2]  She stated she was 32 years of age at the time of trial, and she estimated Sommer was 29 or 30 years old.  She admitted she and Sommer "had altercations when we were younger, but nothing to complain about."  (Tr. Vol. II at 34.)  She stated that her relationship with Sommer has been "rocky for the last year or so due to this altercation."  (Tr. Vol. II at 34.)

{¶ 6}  Mann testified she and Irvin are best friends, and they were both using drugs on the night of the shooting.  Mann admitted she was an opiate addict for six years, but she maintained she was sober at the time of trial.  Mann recalled that Irvin called 911 immediately after the shooting incident on July 22, 2017 and that she was standing close to the phone during that phone call.  During the 911 conversation, Mann can be heard in the

---

[2] The record shows appellant was born on October 19, 1995, and she was 21 years old on the date of the offenses.

background speaking with Irvin as Irvin is relaying the license plate number of the vehicle appellant was driving. At one point during the conversation, Mann got on the phone and told the 911 operator "[t]hey threatened to do this. They threatened to come over to my house. They threatened to do all of that." (Tr. Vol. II at 47.)

{¶ 7} After listening to the 911 recording, Mann acknowledged that it was her voice on portions of the recording. She testified she "[w]ent and got high" after the 911 call and before the police arrived. (Tr. Vol. II at 56.) Mann also remembered talking to police that night, making a statement, and identifying photographs of Sommer and appellant. (State's Exs. 14 and 15.) However, she testified "I just don't remember what I said and where it really came from." (Tr. Vol. II at 56-57.) Outside the presence of the jury, Mann listened to the tape recorded interview she gave to police on the night of the incident, in order to refresh her recollection. After listening to the recording, Mann testified, without objection, as follows:

> Q. Ms. Mann, did you have an opportunity to listen to your interview with the police from that night of the shooting?
>
> A. Yes, sir.
>
> Q. And do you remember telling the police who you saw running right towards you and the house?
>
> A. Yes, sir.
>
> Q. And who did you tell the police was running towards you and the house?
>
> A. Sommer Steward.
>
> Q. And did you tell the police that Sommer Steward had something in her hand when she was running towards you and the house?
>
> A. I said she was running with a gun. We just listened to it.
>
> Q. And did you tell the police anything about shooting that gun?
>
> A. Yes, I said she was shooting it. I just heard it and it refreshed my memory, the recording that you just played. Prior to that, I didn't remember what I said on the recording. It's all new to me. * * *
>
> * * *
>
> Q. Do you remember telling the police who you saw sitting in the car?

A. I remember -- Well, I heard it on that tape. I said [appellant] was driving the car, in which I know [appellant], what she looks like, because I've been knowing her since she was nine. So it wouldn't even took me looking at her time for me to realize that she had freckles and she was light-skinned. But I just said that on the thing. I did give a description of Sommer, I gave a description of [appellant], and of the car. I remember --

Q. So all those things did happen?

A. -- now that I hear it.

Q. That night when the police came, you did tell the police all those things you just testified to today?

A. I told those police those things. In the same breath, I was high. When the shots went off, I don't remember who did them. I don't remember seeing who. I can't say that I seen Sommer, because I didn't. I was scared and I went that way.

(Tr. Vol. II at 92-94.)

{¶ 8} On cross-examination by Sommer's trial counsel, Mann testified as follows:

Q. And finally -- again, not what you can specifically remember now that you just listened to the 911 --

A. Mm-hmm.

Q. -- but what you're telling us now is that you specifically -- not what [Irvin] said -- you specifically did not see either one of these young women participate in this shooting?

A. No, I didn't.

(Tr. Vol. II at 73.)

{¶ 9} Police were able to obtain arrest warrants for both appellant and Sommer based on the information provided by Irvin and Mann and the other evidence collected at the scene. The suspect vehicle, a "bluish-green" Honda CRV, was found parked outside Sommer's residence located at 1394 East Whittier Street, in Columbus, Ohio. (Tr. Vol. II at 102, State's Ex. 2-3.) Following Sommer's arrest, police guarded the house while detectives obtained a search warrant. During a search of the residence, Detective Ronald Lemmon of the Columbus Division of Police seized a firearm that had been "wrapped up in" a tee-shirt in a bedroom closet. (Tr. Vol II at 246.) Testing revealed the .357 magnum found in Sommer's closet was operable. The crime lab also determined each of the shots fired at Irvin's residence were fired by the same weapon. Though the evidence also showed that the

caliber of the cartridges and shells recovered from the crime scene were compatible with the .357 magnum recovered at Sommer's residence, that firearm could neither be identified nor eliminated as the firearm used in the shooting.  (State's Ex. 6-1.)  DNA found on the tee-shirt was from an unidentified male.  The firearm was not tested for the presence of DNA.

{¶ 10} On August 1, 2017, a Franklin County Grand Jury indicted appellant and Sommer on two counts of felonious assault, in violation of R.C. 2903.11, a second-degree felony, and one count of discharging a firearm at or into a habitation, in violation of R.C. 2923.161, a second-degree felony.  Three-year firearm specifications accompanied each of the charges.  Appellant was charged with an additional count of having a weapon while under disability, in violation of R.C. 2923.13, a third-degree felony.  The offense underlying that charge was a 2010 adjudication of delinquency for burglary.

{¶ 11} A jury found appellant guilty of two counts of felonious assault, one count of discharging a firearm at or into a habitation, and three firearm specifications.  The trial court sentenced appellant to a concurrent prison term of two years for each offense, consecutive to the three-year firearm specifications, for an aggregate prison term of eight years.[3]  Appellant waived a jury trial on the charge of having a weapon while under disability.  Following a bench trial, the trial court found appellant not guilty of that charge.

{¶ 12} Appellant timely appealed to this court from the judgment of the trial court.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellant assigns the following as trial court error:

> 1. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S R. 29 MOTION FOR ACQUITTAL.
>
> 2. THE COURT'S FINDING THAT DEFENDANT-APPELLANT IS NOT GUILTY OF HAVING A WEAPON UNDER DISABILITY NEGATES AN ESSENTIAL ELEMENT OF THE CRIMES OF FELONIOUS ASSAULT AND IMPROPERLY DISCHARGING A FIREARM INTO A HABITATION, NECESSITATING REVERSAL OF JURY VERDICTS OF GUILTY ON THOSE CHARGES.
>
> 3. THE TRIAL COURT ERRED BY ADMITTING THE FIREARM RECOVERED FROM 1394 E. WHITTIER INTO

---

[3] The trial court did not impose a sentence on the firearm specification attached to Count 3.

EVIDENCE, IN VIOLATION OF EVIDENCE RULE 401 AND THE DEFENDANT-APPELLANT'S RIGHT TO A FAIR TRIAL GUARANTEED BY THE UNITED STATES CONSTITUTION.

4. THE VERDICTS OF FELONIOUS ASSAULT AND IMPROPERLY DISC[H]ARGING A FIREARM INTO A HABITATION OR SCHOOL SAFETY ZONE WERE AGAINST THE MANAIFEST WEIGHT OF THE EVIDENCE.

## III. LEGAL ANALYSIS

{¶ 14} Because appellant's first and fourth assignments of error challenge both the sufficiency and weight of evidence presented by plaintiff-appellee, State of Ohio, we will consider them together.

### A. Appellant's First and Fourth Assignments of Error

{¶ 15} In appellant's first assignment of error, appellant argues the trial court erred when it denied her Crim.R. 29 motion for acquittal because appellee failed to produce sufficient evidence of appellant's guilt beyond a reasonable doubt. In appellant's fourth assignment of error, appellant contends the jury verdict was against the manifest weight of the evidence.

{¶ 16} Crim.R. 29(A) provides: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.' " *State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 27, quoting *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Kurtz* at ¶ 15. "In determining whether the evidence is legally sufficient to support a conviction, ' "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " *Id.*, quoting *State v. Robinson*, 124 Ohio St.3d 76,

2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 32, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 17} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). "Further, 'the testimony of one witness, if believed by the jury, is enough to support a conviction.' " *Patterson* at ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. *See also State v. Clark*, 10th Dist. No. 15AP-926, 2016-Ohio-5493, ¶ 25.

{¶ 18} "When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Patterson* at ¶ 34, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *Kurtz* at ¶ 17, quoting *Thompkins* at 387, quoting *Martin* at 175.

{¶ 19} "In conducting a manifest weight of the evidence review, we may consider the credibility of the witnesses." *Kurtz* at ¶ 18, citing *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these

observations in weighing the credibility of the proffered testimony.' " *Kurtz* at ¶ 18, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).  "Accordingly, we afford great deference to the jury's determination of witness credibility." *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 14.  "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25, *appeal not allowed*, 140 Ohio St.3d 1455, 2014-Ohio-4414, citing *State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 7.

{¶ 20}  The jury found appellant guilty, under a complicity theory, of two counts of felonious assault and one count of discharging a firearm at or into a habitation.  R.C. 2903.11(A) defines the offense of felonious assault, in relevant, part as follows:

> No person shall knowingly do either of the following:
> * * *
>
> (2)  Cause or attempt to cause physical harm to another * * *
> by means of a deadly weapon or dangerous ordnance.

R.C. 2923.161(A)(1) prohibits any person from "knowingly * * * [d]ischarg[ing] a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual."  R.C. 2923.03(A) defines the offense of complicity, in relevant part, as follows:

> No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
> * * *
>
> (2) Aid or abet another in committing the offense.

{¶ 21}  Appellant argues the trial testimony of the two victims who denied seeing appellant at the crime scene and the absence of physical evidence tying appellant to the crimes, resulted in a guilty verdict that cannot be sustained by the evidence.  For example, appellant points out that the two victims admitted they were under the influence of illegal drugs when they told police that appellant was involved in the shooting and identified appellant's photograph.  The two victims testified, in spite of their prior identification of appellant as the driver of the vehicle, they had no present recollection of seeing appellant at the crime scene.  Appellant also emphasizes Mann's trial testimony that she could not recall having made the prior identification of appellant as the driver of the vehicle, and Irvin's trial testimony that she assumed appellant was the driver because of her recent physical altercation with appellant's aunt and because Mann told her she saw appellant on

July 22, 2017.  Appellant further maintains that appellee failed to present any evidence that appellant resided at the address where the .357 magnum was discovered and failed to present DNA evidence linking appellant to the crimes.

{¶ 22} Appellee contends the 911 recording, which was played to the jury during Mann's testimony and admitted into evidence in this case, provided the jury with sufficient evidence to support appellant's convictions.  We agree.  When viewed in appellee's favor, the statements Irvin admitted she made to the 911 operator immediately after the shooting, if believed, provided sufficient evidence to support appellant's convictions as an aider and abettor to Sommer.  Though Irvin claimed at trial she did not see appellant in the driver's seat of the suspect's vehicle on July 22, 2017, she did not deny making the statements incriminating appellant in her 911 call.  Irvin also admitted she told police that appellant was the driver of the vehicle Sommer arrived in before the shooting and fled in after the shooting.  Irvin signed her name to appellant's photograph and printed the date and time of the identification on the photograph.

{¶ 23} Similarly, Mann did not deny she told police after the shooting that appellant was the person driving the vehicle that Sommer exited from before firing shots at Irvin's home.  She also admitted telling police that Sommer rode off in the same vehicle, with appellant at the wheel, after firing those shots.  She did not deny signing her name to the photograph of appellant on the night of the shooting.  Mann testified, however, she had no present recollection of making the incriminating statements and denied seeing appellant at the crime scene on July 22, 2017.  Like Irvin, Mann attributed her lack of perception to the darkness of the evening and the effect of illegal narcotics in her system.

{¶ 24} "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.  Such intent may be inferred from the circumstances surrounding the crime."  *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. Though the "[m]ere presence [of the defendant] at the scene of the crime is not enough, by itself, to prove the defendant aided and abetted[,] * * * [a]iding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense

is committed." *State v. Dennis,* 10th Dist. No. 08AP-369, 2008-Ohio-6125, ¶ 35, citing *Johnson* at 243, 245. This court has previously observed that "[t]he mere act of driving away from the scene of a shooting perpetrated by a passenger of a vehicle has been held to be sufficient to uphold a conviction based on complicity where the circumstances show the driver knew shots were being fired by the passenger." *State v. Garner*, 10th Dist. No. 07AP-474, 2008-Ohio-944, ¶ 21, citing *State v. Jones*, 10th Dist. No. 02AP-1390, 2003-Ohio-5994. *See also Dennis* at ¶ 38 (where appellant had driven up to the victim, waited for his accomplice while he shot the victim, and then yelled at his accomplice to get back in the car before driving away, evidence was sufficient to support appellant's conviction, as an aider and abettor, of felonious assault with a firearm specification).

{¶ 25} When construed in appellee's favor, the 911 recording, combined with Mann's and Irvin's admissions at trial that they made the incriminating statement heard on the recording, provides sufficient evidence to prove, beyond a reasonable doubt, appellant was the driver of the vehicle used by Sommer to arrive at the crime scene before the commission of the offenses and to flee the scene after the shooting. The evidence also shows that appellant's aunt, Sommer, had a fistfight with Irvin a few days prior to the shooting and that Sommer left threatening text messages on Mann's phone. On the night of the shooting, a vehicle driven by appellant was parked in the cul-de-sac outside Irvin's home prior to the time Irvin and Mann arrived. According to Mann's statements to the 911 dispatcher, after Sommer fired the shots at Irvin's home, she left in the vehicle driven by appellant. Accordingly, the evidence supports a finding that appellant supported and assisted Sommer in the commission of felonious assault and discharging a firearm at or into a habitation by driving the vehicle Sommer used to arrive at the crime scene and then flee the scene after committing the offenses. In our view, the testimony of the two victims and the 911 recording, when viewed in a light favorable to appellee, provided sufficient evidence to support appellant's guilt as an accomplice of Sommer beyond a reasonable doubt. Accordingly, appellant's first assignment of error is without merit.

{¶ 26} Appellant nevertheless argues in her fourth assignment of error that the convictions are against the manifest weight of the evidence given the victims' assertion at trial that they did not see appellant at the scene of the shooting. We disagree.

{¶ 27} " '[W]here a factual issue depends solely upon a determination of * * * the credibility of witnesses, a reviewing court will not, except upon extremely extraordinary circumstances, reverse a factual finding * * * as being against the manifest weight of the evidence.' " *In re L.J.*, 10th Dist. No. 11AP-495, 2012-Ohio-1414, ¶ 21, quoting *In re Johnson*, 10th Dist. No. 04AP-1136, 2005-Ohio-4389, ¶ 26 (citations omitted). "It is the province of the factfinder to determine the truth from conflicting evidence, whether the conflicting evidence comes from different witnesses or is contained within the same witness's testimony." *State v. Oteng*, 10th Dist. No. 14AP-466, 2015-Ohio-1231, ¶ 72. " 'The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible.' " *Id.*, quoting *State v. Williams*, 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 16.

{¶ 28} In this instance, the jury had the task of deciding whether Irvin and Mann saw appellant in the driver's seat of the vehicle during the crimes. The jury had to determine whether the victims were telling the truth when they spoke to the 911 operator and to police on the night of the shooting or at trial where they denied seeing appellant at the crime scene. On this record, the jury was free to believe the statements Mann and Irvin made on the 911 tape and to police on the night of the shooting and disbelieve their claims at trial that they did not see appellant in the cul-de-sac on the night of the shooting.

{¶ 29} In our role as the thirteenth juror, we find evidence in the record to support the credibility determination made by the jury. For example, the jury heard both Irvin and Mann admit they did not want to give testimony harmful to appellant, as they had been childhood friends with appellant and Sommer. The jury also heard Irvin acknowledge that in the 14 months between her police interview and the trial of this matter, she never informed police that she did not see appellant driving the vehicle on the night of the shooting and falsely identified appellant and Sommer as the offenders. Additionally, even though the victims claimed, at trial, they could not see who was driving the suspect vehicle due to darkness of the evening and the fact they were under the influence of illegal drugs, the evidence shows that Mann was able to accurately perceive and recall the license plate number of the vehicle driven by the perpetrators on the night of July 22, 2017. The evidence shows that the license plate was displayed inside the rear window of the suspect vehicle and that it matched the plate number of a bluish-green Honda CRV, fitting that general

description, found at Sommer's residence.  Mann was also able to correctly provide the street number of Sommer's residence to the 911 operator.

{¶ 30} In the final analysis, the jury was in the best position to view the victims' manner and demeanor while testifying and determine whether the victims' trial testimony was credible.  The jury took into account the inconsistencies in the statements the victims admitted making immediately following the crimes and their trial testimony.  The jury obviously believed the statements Irvin and Mann made to the 911 dispatcher and the statements they gave to police even though both witnesses claimed, at trial, they did not see appellant at the scene of the crime.

{¶ 31} Appellant next contends that she cannot be convicted absent some physical evidence linking her to the crimes.  Appellant is mistaken, as " '[a] lack of physical evidence, standing alone, does not render [a defendant's] conviction against the manifest weight of the evidence.' "  *State v. Brown*, 10th Dist. No. 16AP-753, 2017-Ohio-7134, ¶ 26, quoting *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 21, citing *State v. Conner*, 10th Dist. No. 12AP-698, 2013-Ohio-2773, ¶ 12.  A conviction based on victim's testimony identifying the defendant was not against the manifest weight of the evidence despite the lack of physical evidence.  *State v. Jackson*, 7th Dist. No. 09 JE 13, 2009-Ohio-6407, ¶ 15. " 'If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other type of physical evidence does not render the conviction against the manifest weight of the evidence.' "  *Peeples* at ¶ 21, quoting *Jackson* at ¶ 16.  Given the victims' identification of appellant immediately after the crimes, the manner in which this shooting incident occurred, including the perpetrators fleeing with the weapon, the absence of DNA or fingerprint evidence linking appellant to the crime did not preclude a guilty verdict in this case.

{¶ 32} Contrary to appellant's assertion, the testimony of appellee's witnesses was sufficient to prove each of the elements of felonious assault and discharging a weapon at or into a habitation beyond a reasonable doubt.  In our position as the thirteenth juror, we cannot say that the jury lost its way in resolving inconsistencies in the victims' testimony. Nor can we say that the guilty verdicts created a manifest injustice.

{¶ 33} For the foregoing reasons, we overrule appellant's fourth assignment of error.

**B. Appellant's Second Assignment of Error**

{¶ 34} In appellant's second assignment of error, appellant contends the trial court's finding of not guilty as to the charge of having a weapon while under disability ("WUD") requires this court to reverse the convictions of felonious assault and discharging a firearm at or into a habitation. We disagree.

{¶ 35} R.C. 2923.13(A) defines the crime of having a weapon while under disability in relevant part:

> Unless relieved from disability under operation of law or legal process, *no person shall knowingly acquire, have, carry, or use any firearm* or dangerous ordnance, if any of the following apply:
>
> * * *
>
> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

(Emphasis added.)

{¶ 36} "In order to 'have' a firearm under R.C. 2923.13, one must either actually or constructively possess the firearm." *State v. Dodson*, 10th Dist. No. 17AP-541, 2019-Ohio-2084, ¶ 17, citing *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 121. "A person has actual possession of an item when it is within his immediate physical control." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 27 (10th Dist.). " 'Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession.' " *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 32, quoting *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976).

{¶ 37} "Dominion and control over an object 'may be proven by circumstantial evidence alone.' " *State v. Walker*, 10th Dist. No. 14AP-905, 2016-Ohio-3185, ¶ 71, quoting *State v. Trembly*, 137 Ohio App.3d 134, 141 (8th Dist.2000). "[T]he surrounding facts and circumstances, including defendant's actions, constitute evidence from which the trier of fact can infer whether the defendant had constructive possession." *Pilgrim* at ¶ 27.

{¶ 38} Appellant argues that because the trial court, as the trier of fact, found appellant not guilty of WUD, the jury was precluded from finding her guilty as an aider and abettor. We disagree.

{¶ 39} The trial court made the following ruling on the WUD charge:

> I really leave to the jury whether identity is proven here. If [appellant] was the driver of the blue vehicle, and if in fact the firearm, or a firearm, was in the vehicle with Sommer Steward, they might infer that, they might not, from the identification and other testimony, and from the fact that a gun was found in Sommer Steward's home under the search warrant.

> But there's no evidence that [appellant] shot at the house or had direct actual possession of the gun. Arguably, as I say, she was the get-away driver, but to have constructive possession under the WUD statute, as I understand the law in Ohio, somebody has to be able to exercise dominion and control over the gun, or be in such close proximity to the gun -- like when it's near the gear shift in a car that they are driving -- that they can reach down and pick it up, when the evidence here I believe is too thin to find beyond a reasonable doubt that [appellant] had constructive possession and the ability to exercise that kind of control over Sommer Steward's firearm if Sommer Steward had the gun.

> I'm reminded, as you all addressed in closing argument, that in making a decision about whether somebody is proven guilty beyond a reasonable doubt, the proof has to have such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs, and I can't get there with the facts we have in this case, and the lack of any better or direct or circumstantial evidence case that [appellant] really had dominion and control over the firearm. So I find her not guilty of the WUD.

(Tr. Vol. III at 91-92.)

{¶ 40} As we have determined in overruling appellant's first and fourth assignments of error, appellant's convictions of felonious assault and discharging a firearm at or into a habitation, as an accomplice of Sommer, are supported by sufficient evidence and not against the manifest weight of the evidence. In finding appellant not guilty of WUD, the trial court acknowledged the jury could find that, based on the evidence presented by appellee, appellant was the person in the vehicle as Sommer fired gunshots into Irvin's home and then drove off. Thus, we disagree with appellant's contention that the trial court's

findings with respect to the WUD charge indicated that the trial court did not believe the evidence was sufficient to find appellant guilty on the other charges in the indictment as an aider and abettor of Sommer.

{¶ 41} Similarly, we find appellant's reliance on *Smith v. Massachusetts*, 543 U.S. 462 (2005), is misplaced. In *Smith*, the accused and a co-defendant were tried on two counts of assault and one count of unlawful possession of a firearm. At the conclusion of the prosecution's case, the accused moved the trial court for a finding of not guilty on the firearm charge. The trial judge granted the motion, finding there was "not a scintilla of evidence" that the accused had unlawful possession of a firearm having a barrel shorter than 16 inches, as was required for a conviction under Massachusetts law. *Id.* at 465.

{¶ 42} Following the jury trial on the other charges, the prosecution argued that under Massachusetts common law, a victim's testimony that the defendant shot him with a "pistol" or "revolver" was sufficient to prove barrel length. *Id.* at 465. The jury convicted defendant of the firearm charge. On appeal, the United States Supreme Court held that, even though the trial court may have misapprehended Massachusetts law in ruling on defendant's motion for acquittal, the trial court nevertheless violated double jeopardy when it permitted the jury to consider defendant's guilt of the firearm charge after the trial court had acquitted defendant of that charge. *Id.* at 473, citing *Smalis v. Pennsylvania*, 476 U.S. 140, 144 (1986).

{¶ 43} *Smith* is distinguishable from this case. Here, after having denied appellant's Crim.R. 29 motion as to the primary offenses in the indictment, the trial court ruled that appellant was not guilty of WUD because there was no evidence appellant either fired the weapon or had dominion and control of the weapon during the commission of the offense. Contrary to appellant's assertion, the trial court did not reconsider the question whether appellant could be found guilty of the primary offenses in the indictment as an aider and abettor of Sommer. As previously noted, the jury was not required to find appellant had dominion and control over the firearm in order to find her guilty as an aider and abettor of Sommer in committing either felonious assault, discharging a weapon at or into a habitation, or the accompanying firearm specifications. *Dennis*, 2008-Ohio-6125; *Garner*, 2008-Ohio-944. Thus, the trial court's ruling on the WUD charge did not equate to a finding that appellant was not guilty of complicity. For this reason, we find no merit in

appellant's contention that the trial court's acquittal of appellant on the WUD charge precluded the jury from finding appellant guilty of the primary offenses in the indictment.

{¶ 44} For the foregoing reasons, appellant's second assignment of error is overruled.

### C.  Appellant's Third Assignment of Error

{¶ 45}  In appellant's third assignment of error, appellant argues the trial court erred when it admitted evidence of the firearm found in Sommer's home.  We disagree.

{¶ 46}  " '[T]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Robb*, 88 Ohio St.3d 59, 69 (2000), quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus.  "Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of evidence." *Oteng*, 2015-Ohio-1231, at ¶ 31, citing *State v. Jewett*, 10th Dist. No. 11AP-1028, 2013-Ohio-1246, ¶ 52, citing *State v. Martin*, 19 Ohio St.3d 122, 129 (1985).  An abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *State v. Johnson*, 10th Dist. No. 05AP-12, 2006-Ohio-209, ¶ 19, citing *State v. Reiner*, 89 Ohio St.3d 342, 356 (2000).

{¶ 47} Appellant first contends the firearm found in Sommer's home, a .357 magnum, was irrelevant to the case against appellant because no evidence was produced by appellee indicating appellant lived with Sommer or had access to Sommer's home.  We disagree.

{¶ 48}  At trial, the evidence showed that the operable .357 magnum could "neither be identified nor eliminated" as the weapon that fired the casings and spent shells found at the crime scene.  (Tr. Vol. II at 138-39; State's Ex. 6-1.)  Appellee nevertheless argued the .357 magnum was relevant to the case against appellant because it showed appellant's accomplice had access to an operable firearm capable of firing ammunition of the same caliber as that found at the crime scene.  The trial court agreed with appellee, and we agree with the trial court.

{¶ 49} Because appellant was charged with complicity, the fact that appellant did not have access to the place where the .357 magnum was stored is not dispositive of its relevance because there is no dispute that a firearm was used in the commission of the

offenses and the operable .357 magnum recovered from Sommer's closet could neither be identified nor eliminated as the weapon that fired the casings and spent shells found at the crime scene. On this record, the operable .357 magnum was relevant when offered to prove appellant's accomplice had access to a weapon that could not be excluded as the weapon used in the commission of the offenses.

{¶ 50} Appellant next contends the .357 magnum should have been excluded from evidence under Evid.R. 403(A). Evid.R. 403(A) states that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." As previously stated, the .357 magnum found in the home of appellant's co-defendant was probative of appellant's guilt given the complicity charge. Had this case not involved the use of a firearm or had the forensic analysis excluded the possibility that the .357 magnum was used in the shooting, appellant's claim of unfair prejudice may have had merit. On this record, however, we cannot say that the trial court abused its discretion when it ruled that the danger of unfair prejudice to appellant did not substantially outweigh the relevance of the evidence.

{¶ 51} For the foregoing reasons, appellant's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 52} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and NELSON, JJ., concur.

_____