[Cite as *State v. Bowman*, 2025-Ohio-1795.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                             :

      Plaintiff-Appellee,                         :

                                      No. 24AP-398
v.                                                        :        (C.P.C. No. 21CR-3233)

Michael T. Bowman,                                        :        (REGULAR CALENDAR)

      Defendant-Appellant.                        :

---

D E C I S I O N

Rendered on May 20, 2025

---

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Michael A. Walsh*, for appellee. **Argued:** *Michael A. Walsh*.

**On brief:** *April F. Campbell*, for appellant. **Argued:** *April F. Campbell.*

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Michael T. Bowman, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of sexual battery, in violation of R.C. 2907.03, a third-degree felony. For the reasons that follow, we affirm.

**I. Facts and Procedural History**

{¶ 2} On August 12, 2021, appellant was indicted on one count of rape, in violation of R.C. 2907.02, a first-degree felony, and two counts of sexual battery, in violation of R.C. 2907.03, both third-degree felonies. The indictment alleged the foregoing offenses were committed by appellant against his daughter, a minor. Appellant entered a not guilty plea to the charges and requested a jury trial.

{¶ 3}   On April 15, 2024, a jury trial commenced.  Prior to voir dire, the state, without objection, dismissed one of the two counts for sexual battery and modified the theory of the rape charge.  At trial, the following evidence was adduced.

{¶ 4}   The state called the Mother of the victim as its first witness.[1]  Mother testified that on June 11, 2021, she was living in an apartment with Daughter, her newborn son, and the father of the newborn son, Antonio.  Appellant lived nearby in an apartment with his girlfriend and their child.  On that day, appellant called Mother to ask to have Daughter over for a sleepover.  Mother gave her permission, believing that appellant, his girlfriend, their child, and Daughter were all going swimming and to a movie.  Appellant picked up Daughter.

{¶ 5}   Early the next morning, Mother was awakened by the sound of loud knocks on the door to the apartment.  Antonio answered the door and Daughter came in, crying.  Mother learned that appellant engaged in vaginal intercourse with Daughter.

{¶ 6}   Mother went to appellant's apartment.  According to Mother's testimony, appellant claimed Daughter was lying about having engaged in vaginal intercourse with him.

{¶ 7}   Mother went back to her own apartment, instructed Daughter to keep on her clothes, and drove her to the hospital.  At the hospital, a nurse practitioner took swabs of Daughter's private areas and collected her clothes.

{¶ 8}   The state called Daughter as its next witness.  On June 11, 2021, she was 13 years old.  She testified that on that day, appellant invited her to his apartment for a sleepover.  Appellant picked her up and they went to a gas station to buy food and drinks before going to his apartment.  Daughter thought appellant's girlfriend and son would be there, but upon arriving at the apartment, she discovered they were out of town, leaving her alone with appellant.

{¶ 9}   Daughter testified that while she was in the kitchen and living room area, appellant was in his bedroom.  Appellant called her into his bedroom and asked her to sit on his lap, which she did.  Appellant then told her they "were going to play something, play like a game, and it had alcohol involved[.]"  (July 23, 2024 Tr. Vol. 1 at 65-66.)  He warned

---

[1] Both the victim and her mother testified, and they share initials. To protect the victim's identity and avoid confusion, we refer to them as "Mother" and "Daughter."

her not to tell Mother.  Appellant gave Daughter a mixed drink for the game.  Daughter testified she did not drink much of it, finding it tasted "nasty[,]" but appellant encouraged her to take "big sips at a time."  (Tr. at 66.)

{¶ 10}  Daughter further testified that she began to feel tired from the alcohol, so she asked if she could go to bed.  Appellant resisted initially, but eventually allowed her to go to sleep in his bed.  Appellant was awake, sitting in his chair, when Daughter fell asleep.  Daughter was wearing boxers and a shirt when she went to sleep.

{¶ 11}  Daughter continued her testimony, stating that during the night, she awoke to the feeling of appellant being on top of her, thrusting his penis into her vagina.  Her boxers had been removed.  She tried to push him off, but each time she did he began thrusting harder and he eventually pinned down her arms.  Daughter began to cry.  Appellant then stopped, laid down next to her, and told her that "it was going to be okay and that this is what big girls do[.]"  (Tr. at 69.)

{¶ 12}  Daughter testified that she then collected her belongings and went into the living room, where an inflatable mattress was set up.  She fell asleep again, but soon awoke to appellant laying on top of her.  He began thrusting his penis into her vagina again.  Daughter testified that his actions "hurt very bad" and she started to cry.  (Tr. at 70.)  Appellant finally stopped.  Appellant did not wear a condom during these events.

{¶ 13}  Daughter testified that after appellant stopped, he went into the bathroom to take a shower.  Daughter got dressed, took a knife from the kitchen, and snuck out of appellant's apartment.  She began to walk home.  She asked two people to use a phone to call her mom, but they refused.

{¶ 14}  Daughter testified that appellant eventually drove up beside her and lectured her about sneaking out of the apartment.  Daughter told him she wanted to go home, and appellant agreed to drive her home.  Daughter arrived home and banged loudly on her door to wake someone up. Antonio let her inside, and she ran to tell Mother what had happened.  Mother left to confront appellant.  Mother then returned home, told daughter to remain in her same clothes, and took her to the hospital.  At the hospital, she was examined and interviewed by medical staff.  After that, she talked to a detective.

{¶ 15}  The state called Columbus Police Detective David Phillips as its next witness.  Detective Phillips testified that on June 12, 2021, he received a phone call from a social

worker at Nationwide Children's Hospital, who reported a sexual assault victim presenting at the emergency room.  Detective Phillips spoke with the social worker, a nurse, and Mother.  He obtained a rape kit performed on Daughter.  After identifying appellant as the suspect in the case, Detective Phillips interviewed appellant and took a DNA sample from him.

{¶ 16} The state next called Dr. Catherine Huber, a child abuse pediatrician at Nationwide Children's Hospital, as an expert in child sexual assault examinations.  Dr. Huber reviewed an examination of Daughter performed by a nurse on June 12, 2021.  On June 14, 2021, Dr. Huber co-signed and attested to the report produced after that examination.  On cross-examination, Dr. Huber testified that the colposcope photographs of the victim's injuries may have been misaligned, resulting in a failure to capture the injuries accurately.  She further testified that the minor abrasion seen on the hymen could be consistent with masturbation or some other injury rather than sex, and the photographs did not indicate any significant trauma or swelling.  She also testified, however, that photographic documentation often does not fully represent the extent of a victim's injuries.

{¶ 17} The state called Colleen Hague as its next witness.  Hague worked as a forensic scientist in the DNA section of the Columbus Police crime laboratory.  Hague issued a report for this case on August 8, 2021.  Hague conducted Y-STR DNA testing for this case.  Hague explained that "Y-STR testing refers to a specific type of testing that looks only at male DNA."  (Tr. at 189.)  Hague further explained that Y-STR testing filters out female DNA to allow interpretation of any male DNA found in a sample.  Her evaluation found a Y-STR profile on a swab taken from Daughter's anus that matched appellant and any paternally related male relatives.  Hague explained that fathers pass down Y-STR DNA to their sons, so "every male in a paternal line will have the same Y-STR profile unless there are some small changes, which can occur as it is being passed down." *Id.*

{¶ 18} Finally, the state called as its last witness, Heather Cassill, a social worker at Nationwide Children's Hospital, as an expert in forensic interviewing.  Cassill testified that on June 12, 2021, she interviewed Daughter and produced a report based on that interview.  Cassill's testimony recounted her recollections of Daughter's disclosures on that day based on both Cassill's report and her own memory.

{¶ 19} After the state rested its case, the trial court admitted the state's exhibits, without objection. Defense counsel moved for acquittal under Crim.R. 29, and the trial court denied the motion.

{¶ 20} Appellant testified in his own defense. He stated that prior to June 2021, he had little contact with Daughter. On June 11, 2021, appellant picked up Daughter and brought her to his apartment. He heated up the food which she had brought with her to eat. Appellant set up his television for Daughter to use.

{¶ 21} Appellant testified he and Daughter went into his bedroom and Daughter stood behind him while he showed her some games on his computer. Daughter then turned on a movie and sat on the bed while appellant remained in his computer chair. Appellant testified that he and Daughter talked during the movie until Daughter fell asleep. Appellant testified that he woke Daughter up and had her move to his son's mattress in the living room, and he went back to his bedroom.

{¶ 22} Appellant further testified that he recalled hearing Daughter open the refrigerator three times before he reminded her to go to sleep. He heard her go to the restroom and then he dozed off.

{¶ 23} Appellant testified he woke up and went to the restroom. He saw Daughter's boxers on the floor in front of the toilet. He picked them up to put with her belongings in the living room and found Daughter lying bottomless and uncovered on the mattress. Appellant testified he woke her up, finding her groggy, confused, and partially unresponsive. He helped her put her boxers back on, during which he did not recall touching her rectum, then went to the refrigerator to get her a drink. Appellant testified he noticed that a bottle of vodka was out of place in the refrigerator and contained less liquid than he recalled. He confronted Daughter about drinking the vodka.

{¶ 24} Appellant continued his testimony, stating that he went into the bathroom to smoke, and when he came out, Daughter was gone. He got in his vehicle to go find her and quickly found her walking through his apartment complex. Appellant testified he did not see a knife. Daughter got into his truck, and he drove her back home to Mother's apartment.

{¶ 25} Appellant further testified that after he dropped Daughter off and was driving back home, Mother called him, asking what he had done to Daughter. Mother told him she was coming to see him, and appellant said "okay." (Tr. at 277.) Appellant stated he never

mentioned to Mother that he thought Daughter had stolen vodka because she never gave him the opportunity to do so. Appellant denied assaulting Daughter.

**{¶ 26}** After the defense rested its case, defense counsel renewed the motion for acquittal under Crim.R. 29. The trial court again denied the motion.

**{¶ 27}** At the conclusion of the trial, the jury deadlocked on the rape charge but returned a verdict finding appellant guilty of sexual battery, in violation of R.C. 2907.03, a third-degree felony. (May 30, 2024 Jgmt. Entry at 1.) The trial court accepted the verdict and declared a mistrial on the rape count. The state later dismissed the rape count. On May 30, 2024, the trial court issued a judgment entry, which reflected the verdict of the jury and imposed a 60-month prison sentence, post-release control, and Tier III sex offender registration.

**{¶ 28}** This timely appeal followed.

## II. Assignments of Error

**{¶ 29}** Appellant asserts the following six assignments of error[2] for our review:

[1.] The trial court erred when it denied Michael T. Bowman's Rule 29 Motion for Acquittal.

[2.] The verdict[] of guilt as to the count two of Sexual Battery [was] against the manifest weight of the evidence.

[3.] The trial court erred in amending Bowman's indictment on count one.

[4.] The trial court committed reversible error in admitting the following evidence at Bowman's trial:

The introduction of the RAPE kit and SANE reports and DNA analysis report.

The introduction of the Sexual Assault Pedestrian's testimony.

Victim impact testimony from S.R. and her mother.

The forensic interviewer's report and her testimony of its contents.

[5.] Bowman's convictions should be reversed because his counsel was prejudicially ineffective.

---

[2] Appellant initially asserted only two assignments of error but was permitted to supplement his original brief upon the appearance of new counsel of record. (Jan. 2, 2025 Journal Entry.)

[6.]     Bowman was denied his right to a fair trial in this case because of cumulative error.

(sic passim.)

## III. Discussion

### A. First and Second Assignments of Error

**{¶ 30}** Appellant's first and second assignments of error are interrelated in that they challenge both the sufficiency and weight of the evidence; therefore, we address them together. In his first assignment of error, appellant argues that the trial court erred when it denied his motion for acquittal. In his second assignment of error, appellant argues that the verdict was against the manifest weight of the evidence. We find no merit in either of appellant's contentions.

**{¶ 31}** Crim.R. 29(A) provides, in relevant part, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). Whether a conviction is supported by legally sufficient evidence is a question of law. *State v. Flood*, 2019-Ohio-2524, ¶ 16 (10th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

**{¶ 32}** "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 2010-Ohio-1881, ¶ 36 (10th Dist.), citing *Thompkins* at 386. In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A reviewing court will not disturb the jury's verdict unless the court finds "that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at 273.

**{¶ 33}** In a review for sufficiency of the evidence, we do not engage in a determination of the witnesses' credibility. *State v. Woodward*, 2004-Ohio-4418, ¶ 16 (10th Dist.), citing *State v. Goff*, 82 Ohio St.3d 123, 139 (1998). Rather, "we essentially assume the state's witnesses testified truthfully and determine if that testimony satisfies

each element of the crime." *Id.*, citing *State v. Gore*, 131 Ohio App.3d 197, 200-201 (7th Dist. 1999). Further, the testimony of one witness, if believed by the jury, is sufficient to support a conviction. *State v. Winston*, 2018-Ohio-2525, ¶ 21 (10th Dist.), citing *State v. Strong*, 2011-Ohio-1024, ¶ 42 (10th Dist.).

{¶ 34} Comparatively, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson,* 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

{¶ 35} Furthermore, " '[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, . . . such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.), quoting *State v. Nivens*, 1996 Ohio App. LEXIS 2245, *7 (10th Dist. May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 36} A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 2005-Ohio-4249, ¶ 38 (10th Dist.) (reversed and remanded in part on other grounds). Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 2006-Ohio-2070, ¶ 19

(10th Dist.). This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Huber*, 2019-Ohio-1862, ¶ 32 (10th Dist.), quoting *State v. Cattledge*, 2010-Ohio-4953, ¶ 6 (10th Dist.), quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 37} Appellant was indicted under R.C. 2907.03(A)(5), which provided at the time the alleged offenses occurred as follows:

> (A)  No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
> . . .
> (5)  The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

R.C. 2907.03(A)(5) (eff. Mar. 22, 2019). R.C. 2907.03(A)(5) is a strict liability offense; therefore, mens rea is not an element of the crime and does not have to be proven by the state. *State v. Hannah*, 1986 Ohio App. LEXIS 7120 (10th Dist. June 10, 1986). The state alleged appellant was Daughter's natural father. Thus, to avoid acquittal under a motion made pursuant to Crim.R. 29, the state had to introduce sufficient evidence that (1) sexual conduct occurred between appellant and Daughter; (2) appellant was not married to Daughter; and (3) appellant was Daughter's natural father.

{¶ 38} Appellant admitted to being Daughter's natural father during his testimony. Both Mother and Daughter testified that appellant is Daughter's natural father. Their testimony also demonstrates appellant is not married to Daughter. Therefore, the state presented sufficient evidence of the second and third elements required to be shown.

{¶ 39} The state also presented sufficient evidence that sexual conduct occurred. "Sexual conduct" is defined as

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶ 40} Daughter's testimony, the DNA evidence, and the evidence that Daughter had an abrasion to her genitals that could have resulted from vaginal intercourse and/or could explain why Daughter found appellant's actions painful all constitute sufficient evidence that appellant engaged in sexual conduct—i.e., vaginal intercourse—with Daughter. Indeed, Daughter's testimony *standing alone* was enough to establish sufficient evidence. *State v. O.E.P.-T.*, 2023-Ohio-2035, ¶ 4 (10th Dist.); *State v. Perpignand*, 2021-Ohio-4277, ¶ 39 (10th Dist.).

{¶ 41} Furthermore, appellant's challenges to the sufficiency of the evidence relating to the credibility of the victim witness (Daughter), Mother, and Dr. Huber is wholly irrelevant to a sufficiency analysis. This is so because "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 2009-Ohio-754, ¶ 4 (10th Dist.).

{¶ 42} The foregoing evidence is entirely consistent with a jury finding that appellant had committed sexual battery. Thus, there was sufficient evidence to support appellant's conviction for same, and the trial court did not err by denying appellant's motions for acquittal made pursuant to Crim.R. 29.

{¶ 43} Turning to the manifest weight argument in assignment of error two, appellant asserts only that "the jury has clearly lost its way when they returned a guilty verdict [and] due to the insufficiency of the evidence[,] a guilty verdict is against the manifest weight of the evidence." (Aug. 26, 2024 Brief of Appellant at 18.) Other than reiterating his assertion that the evidence presented by the state was insufficient to support a conviction for sexual battery, appellant does not provide any further basis for this assignment of error. We have already found that the evidence presented at trial by the state was sufficient to support appellant's conviction for sexual battery.

{¶ 44} Furthermore, appellant's challenges to the sufficiency of the evidence relating to the credibility of Daughter and Mother in his first assignment of error that would be relevant to a review of the manifest weight of the evidence are unavailing. First, any inconsistent testimony by either Daughter or Mother regarding Daughter's prior mental health issues, and/or Daughter's testimony regarding how much alcohol she consumed on

the night of the assault, does not render the entirety of either of their testimony to be so non-credible as to require reversal of the jury's verdict. As set forth above, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, . . . such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *Gullick*, 2014-Ohio-1642, at ¶ 10 (10th Dist.), quoting *Nivens*, 1996 Ohio App. LEXIS 2245, at *7. It is well-settled that "[a] jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *Antill*, 176 Ohio St. 61 at 67.

{¶ 45} Similarly, any alleged inconclusiveness of Dr. Huber's testimony regarding Daughter's injuries resulting from the assault and the DNA evidence presented by the state does not render the verdict against the manifest weight of the evidence. The jury was permitted to give the testimony regarding the injuries as much or as little weight as it deemed appropriate. Likewise for the DNA evidence—the jury heard testimony regarding the limitations of the DNA evidence and could properly decide what weight to give this evidence, given the known limitations. Indeed, the jury could have found appellant guilty of sexual battery while completely ignoring the DNA evidence.

{¶ 46} In short, the jury was free to believe Daughter's testimony that appellant sexually assaulted her, and disregard or discount any inconsistencies in any of the testimony. And, as noted previously, " '[t]he testimony of one witness, if believed by the jury, is enough to support a conviction.' " *State v. Steward*, 2019-Ohio-5258, ¶ 17 (10th Dist.), quoting *State v. Patterson*, 2016-Ohio-7130, ¶ 33 (10th Dist.). Considering all the evidence together, the jury did not clearly lose its way in concluding appellant perpetrated the sexual assault on Daughter. There is sufficient evidence to support appellant's conviction, and thus, the trial court did not err in denying appellant's motions for acquittal made pursuant to Crim.R. 29. Furthermore, appellant's conviction is not against the manifest weight of the evidence because he has failed to demonstrate that the jury clearly lost its way and created such a manifest miscarriage of justice that his conviction must be reversed and a new trial ordered.

{¶ 47} Accordingly, appellant's first and second assignments of error are overruled.

### B. Third Assignment of Error

{¶ 48} In his third assignment of error, appellant asserts the trial court erred in amending Count 1 of the indictment. We do not agree.

{¶ 49} We begin by noting that counsel for appellant did not object to the amendment of the indictment on Count 1 in this case. "The failure to object to the trial court's amendment of an indictment constitutes a waiver of the issue upon appellate review, absent plain error." *State v. Powers*, 2001 Ohio App. LEXIS 283, *5 (10th Dist. Jan. 30, 2001), citing *State v. Parks*, 1991 Ohio App. LEXIS 926 (8th Dist. Mar. 7, 1991); *State v. Williams*, 51 Ohio St.2d 112 (1977). To demonstrate plain error, "defendant must show that, absent the alleged error, the result of the trial clearly would have been different." *Id.*, citing *State v. Long*, 53 Ohio St.2d 91 (1978).

{¶ 50} In this case, the trial court amended the rape count from being a count under R.C. 2907.02(A)(1)(b) (prohibiting engagement in sexual conduct with any person less than 13 years of age), to a count under R.C. 2907.02(A)(2) (prohibiting engagement in sexual conduct with any person "when the offender purposely compels the other person to submit by force or threat of force"). But appellant was not convicted for the rape count. Indeed, the jury deadlocked on this count, and the charge was ultimately dismissed by the state. Thus, appellant cannot possibly show that, but for the amendment of the rape count, the result of the trial clearly would have been different. Therefore, the trial court did not plainly err in amending the indictment.

{¶ 51} Accordingly, appellant's third assignment of error is overruled.

### C. Fourth Assignment of Error

{¶ 52} In his fourth assignment of error, appellant asserts the trial court erred in admitting four items of evidence at trial: the RAPE kit and SANE reports and DNA analysis report; the testimony of the sexual assault pediatrician; the victim impact testimony from both Daughter and Mother; and the forensic interviewer's report and her testimony of its contents. We find no merit in this assignment of error.

{¶ 53} We begin by noting that counsel for appellant made no objections to the admission of any of the four items of evidence identified. It is well-settled that an appellate court will not "consider an error which the complaining party 'could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or

corrected by the trial court.' " *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997), quoting *Williams*, 51 Ohio St.2d 112 at 117. *See also State v. Awan*, 22 Ohio St.3d 120, 122 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus. Failure to object to the admission of evidence at trial waives all but plain error. *State v. Rogers*, 2015-Ohio-2459, ¶ 22-23.

{¶ 54} To demonstrate plain error in the admission of evidence at trial, appellant bears the burden of demonstrating the existence of a plain or obvious error that affected the outcome of the trial and resulted in a manifest miscarriage of justice. *See, e.g.*, *State v. West*, 2022-Ohio-1556, ¶ 3, citing *State v. Perry*, 2004-Ohio-297, ¶ 22. To do this, an appellant must show " 'an error, *i.e.*, a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings.' " (Emphasis in original.) *Rogers* at ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). However, even if the error is obvious, it must have affected the appellant's "substantial rights." Crim.R. 52(B). The Supreme Court of Ohio has " 'interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' " *Id.* As such, the appellant must demonstrate a reasonable probability that the error resulted in prejudice to him. *See id.*

{¶ 55} In this case, none of the admissions of evidence by the trial court now complained of by appellant constitutes plain error because appellant cannot demonstrate a reasonable probability that, but for the admission of any of the evidence admitted, the outcome of the trial would have been different—that is, the jury would not have reached its verdict of guilty of sexual battery. This is so because even if *none* of the evidence now complained of by appellant were admitted at trial, the jury could still have readily and reasonably found appellant guilty of sexual battery. As discussed previously, Daughter's testimony *standing alone* was enough to establish sufficient evidence and to withstand a challenge to the manifest weight of the evidence. In addition, Mother's testimony corroborated Daughter's testimony.

{¶ 56} In short, appellant cannot show plain error on the part of the trial court by admitting any of the evidence identified by appellant as improperly introduced.

{¶ 57} Accordingly, appellant's fourth assignment of error is overruled.

### D. Fifth Assignment of Error

{¶ 58} In his fifth assignment of error, appellant asserts his convictions should be reversed because his counsel was prejudicially ineffective. Specifically, appellant contends his trial counsel was ineffective to his prejudice by failing to object to the admission of evidence previously discussed under appellant's fourth assignment of error. We disagree.

{¶ 59} To establish ineffective assistance of counsel, appellant must show (1) that counsel's performance was deficient, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's deficient performance prejudiced the defendant, i.e., that there is a reasonable probability that, but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142-143 (1989).

{¶ 60} Here, as previously discussed, we point out once again that no matter what other evidence may or may not have been admitted, the testimony of Daughter by itself was enough to establish sufficient evidence and to withstand a challenge to the manifest weight. Even if counsel had objected to the evidence now complained of, and even if it had *not* been admitted, there simply is no reasonable probability that appellant would have been acquitted by the jury rather than convicted. Stripping away all the allegedly improperly admitted evidence, the remaining evidence at trial overwhelmingly supports appellant's conviction of sexual battery. Daughter's in-person trial testimony, in which she vividly recounted the sexual conduct appellant made her endure, comprised the crux of the state's case. Her description of the abuse that she suffered easily satisfied the statutory definition of "sexual conduct." Furthermore, Mother offered trial testimony corroborating important details of Daughter's account.

{¶ 61} In short, the testimony of Daughter overwhelmingly supported the conviction for sexual battery. Her testimony alone could have been the state's entire case, and the result of the trial would have been the same. Therefore, appellant has not shown that trial counsel was prejudicially ineffective.

{¶ 62} Accordingly, appellant's fifth assignment of error is overruled.

### E. Sixth Assignment of Error

**{¶ 63}** In his sixth assignment of error, appellant asserts he was denied his right to a fair trial in this case because of cumulative error. This assignment of error is completely meritless.

**{¶ 64}** Under the doctrine of cumulative error, an appellate court will reverse a criminal conviction if "the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 2012-Ohio-2577, ¶ 223. Where there is no error, harmless or otherwise, there can be no cumulative error. *See, e.g.*, *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

**{¶ 65}** Here, as already discussed above, we have found no errors on the part of the trial court, plain, harmless, or otherwise. Therefore, the cumulative error doctrine is inapplicable in this case.

**{¶ 66}** Appellant's sixth assignment of error is overruled.

## IV. Disposition

**{¶ 67}** Having overruled each of appellant's six assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and LELAND, JJ., concur.

———————————